FILED
IN OPEN COURT

MAY -5 2025

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 1:25-CR-00123 |
| v. | ) | |
| | ) | Count 1:   18 U.S.C. § 371 |
| CREDIT SUISSE SERVICES AG, | ) | (Conspiracy) |
| | ) | |
| Defendant. | ) | |
| | ) | |

INFORMATION

**COUNT ONE**
**(Conspiracy)**

THE UNITED STATES ATTORNEY CHARGES THAT:

1. From January 1, 2010, through at least in or about June 2021, the exact dates being unknown to the United States, the defendant

**CREDIT SUISSE SERVICES AG**

(hereinafter "the defendant" or "CREDIT SUISSE") did unlawfully, voluntarily, intentionally, and knowingly conspire, combine, confederate, and agree together with others both known and unknown to the United States to commit the following offense against the United States with respect to accounts in the Switzerland booking center: to willfully aid, assist in, procure, counsel, and advise the preparation and presentation of false income tax returns and other documents to the Internal Revenue Service of the Treasury Department, in violation of Title 26, United States Code, Section 7206(2). Unless otherwise specifically noted herein, CREDIT SUISSE SERVICES AG, its former sister entity, Credit Suisse AG, its former parent Credit Suisse Group AG, and its subsidiaries and affiliates prior to the merger, collectively will be called "CREDIT SUISSE" or "the Bank."

## Manner and Means of the Conspiracy

2. Among the manner and means by which the defendant, CREDIT SUISSE, and its conspirators would and did carry out the conspiracy were the following:

   a. falsifying certain bank records to conceal U.S. ownership and control of accounts;

   b. documenting certain U.S. account owners as non-U.S. persons, while ignoring prior evidence of their U.S. status;

   c. processing fictitious donation paperwork to remove U.S. person(s) from the account and thereafter servicing accounts from which the U.S. person(s) continued to benefit;

   d. maintaining 104 accounts held by a Swiss lawyer/enabler for the benefit of undeclared clients;

   e. maintaining an account with a "hidden" U.S. beneficial owner for which there was ample file evidence of the true beneficial owner's control over the account;

   f. servicing more than $1 billion worth of U.S. accounts without full documentation of tax compliance long after accounts should have been closed; and

   g. transferring paper ownership of an account known to be U.S. to a Swiss trust company as part of a sale that facially appears to be a sham.

3. In each instance described above, the U.S. accounts in question were high-value accounts.

## Overt Acts

4. In furtherance of the conspiracy, and to effect the object thereof, the following overt acts were committed:

2

## HORSKY

a.    On or about January 20, 2000, CREDIT SUISSE opened an account in the name of Horsky Holdings S.A., a nominee entity, and documented Dan Horsky, a U.S. citizen and resident, and a non-U.S. person as beneficial owners of the assets in the Horsky Holdings account and Dan Horsky as an authorized signatory.

b.    On or about March 3, 2008, as the assets in the Horsky Holdings account skyrocketed in value, CREDIT SUISSE allowed Dan Horsky to change beneficial ownership of the assets in the Horsky Holdings and related accounts to Relative-1, a non-U.S. citizen residing outside the United States, but permitted Dan Horsky to retain control of the assets in the account as authorized signatory, and financially benefit from the assets in the account.

c.    In or about 2012, CREDIT SUISSE formally removed Dan Horsky's signature power over the Horsky Holdings and related accounts but allowed him to continue to control the accounts through a family member.

d.    On or about April 15, 2015, Dan Horsky filed, or caused to be filed, with the IRS a false and fraudulent Form 1040, U.S. Individual Income Tax Return, for tax year 2014 on which he failed to report income earned on the assets held in the Horsky Holdings and related accounts.

e.    On or about September 2, 2015, Market Leader-1, a high-level supervisor over the Horsky Holdings and related accounts, met with Horsky in Tel Aviv to discuss management of the Horsky Holdings and related accounts without informing the Relationship Manager who managed the account or that person's supervisor and never documented the meetings in bank records.

f.    On or about November 23, 2015, Market Leader-1 met with Horsky in Tel Aviv to discuss management of the Horsky Holdings and related accounts without informing the Relationship Manager who managed the account or that person's supervisor and never documented the meetings in bank records.

g.    On or about January 26, 2016, Market Leader-1 met with Horsky in Tel Aviv to discuss management of the Horsky Holdings and related accounts in which he acknowledged that Horsky was the owner of the assets in those accounts and strategized on means by which Horsky could defraud the U.S. by perpetrating a ruse that Relative-1, the nominal owner of the accounts in the relationship, could "gift" him the assets in the accounts, which would have been a non-taxable event to Horsky.

## INDIVIDUAL 1

h.    In or about 2009, CREDIT SUISSE opened an account for Individual 1, a naturalized U.S. citizen residing in Florida, in Individual 1's own name ("Account 1") and documented Individual 1 as a non-U.S. citizen domiciled outside the United States even though CREDIT SUISSE knew, and had previously documented, that Individual 1 was a U.S. citizen residing in the United States.

i.    In or about 2009, CREDIT SUISSE assisted Individual 1 to fund Account 1 with assets from a pre-existing account held in the name of a nominee entity at CREDIT SUISSE that had Individual 1 as the documented beneficial owner.

j.    In or about 2009, CREDIT SUISSE opened a third account for Individual 1 in the name of nominee entity ("Account 2") and documented Individual 1 as beneficial owner of the assets in Account 2 and identified him as a non-U.S. citizen domiciled outside the

United States even though CREDIT SUISSE knew, and had previously documented, that Individual 1 was a U.S. citizen residing in the United States.

k. In or about 2009, CREDIT SUISSE assisted Individual 1 in funding Account 2 with assets from Account 1.

l. In or about November 2011, CREDIT SUISSE accepted documentation that changed the beneficial owner of the assets in Account 2 from Individual 1 to a non-U.S. citizen residing outside the U.S. ("Individual 2") even though neither Individual 1 nor Individual 2 provided documentation justifying such a change.

m. In or about December 2013, CREDIT SUISSE allowed Account 2 to remain open after receiving a letter from Individual 1 claiming that he was neither a U.S. citizen nor resident even though documents in CREDIT SUISSE's own files and publicly available information reviewed by CREDIT SUISSE employees provided evidence to the contrary.

n. In March 2014, a CREDIT SUISSE employee reviewed Account 2 and, despite evidence to the contrary, determined that Account 2 neither was nor had been owned or controlled by a U.S. person.

o. In or about April 2017, CREDIT SUISSE deviated from its policies on closing accounts with a U.S. nexus and allowed the assets in Account 2 to be a transferred to a third party's account at another bank.

p. On or about December 4, 2018, Individual 1 filed, or caused to be filed, with the IRS a false and fraudulent Form 1040, U.S. Individual Income Tax Return, for tax year

2017 on which they failed to report income earned on the assets held in Account 2.

    (All in violation of Title 18, United States Code, Section 371.)

ERIK S. SIEBERT
United States Attorney
Eastern District of Virginia
U.S. Department of Justice

*/s/ Kimberly M. Shartar*
Kimberly M. Shartar
Assistant U.S. Attorney

KAREN E. KELLY
Chief, delegated Deputy Assistant Attorney
General for Criminal Matters
Tax Division
U.S. Department of Justice

*/s/ Nanette L. Davis*
Mark F. Daly
Nanette L. Davis
Senior Litigation Counsel
Marissa R. Brodney
Trial Attorney

6